**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>25 MY RENTCO LLC, *et al.*,[1]<br><br><div align="right">Debtors.</div> | **FOR PUBLICATION**<br><br>Chapter 11<br><br>(Subchapter V)<br><br>Case No. 25-12280 (MG) |

<div align="center">

**MEMORANDUM OPINION AND ORDER SUSTAINING CREDITOR'S OBJECTION TO
DEBTORS' DESIGNATION TO PROCEED AS SMALL BUSINESS DEBTORS UNDER
SUBCHAPTER V**

</div>

*A P P E A R A N C E S:*

GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP
*Co-Counsel for Tribeca Space Managers, Inc.*
125 Park Ave., 12th Floor
New York, NY 10017
(212) 221-5700
By:    Kevin J. Nash, Esq.

RIVKIN RADLER LLP
*Co-Counsel for Tribeca Space Managers, Inc.*
477 Madison Avenue, Suite 410
New York, NY 10022
(516) 357-3000
By:    Jeremy Honig, Esq.
       Kenneth Murphy, Esq.
       Matthew V. Spero, Esq.

TARTER KRINSKY & DROGIN LLP
*Counsel for Tribeca Mews Ltd. and 25 My RentCo LLC*
1350 Broadway, 11th Floor
New York, NY 10018
(212) 216-8000
By:    Scott S. Markowitz, Esq.
       Rocco A. Cavaliere, Esq.
       Jacob B. Gabor, Esq.

---

[1]    Pursuant to an order entered by this Court on October 21, 2025 (ECF Doc. # 14), the above-captioned case was procedurally consolidated with *In re Tribeca Mews Ltd.*, Case No. 25-12281.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

This case was filed on October 16, 2025, on behalf of two debtors, 25 My RentCo LLC ("RentCo"), Case No. 25-12280 (MG), and Tribeca Mews Ltd. ("Tribeca Mews"), Case No. 25-12282 (MG) (together, the "Debtors"). The motion for joint administration was granted on October 21, 2025. (ECF Doc. # 14.) The bankruptcy petitions designated the cases under Subchapter V of Title 11. The largest creditor, Tribeca Space Managers, Inc. (the "Board") is the Board of Managers of the condominium project for which each one of the debtors have been and currently are sponsor. The Board has filed an unliquidated claim of $36 million. It filed a motion to dismiss the cases, which the Court has denied in part. (ECF Doc. # 69.)

The Board also filed an objection to the designation of the cases under Subchapter V, arguing that the Debtors' cases are "single asset real estate" ("SARE") cases excluded from eligibility for Subchapter V under section 101(51D) of the Code. ("Objection," ECF Doc. # 42.) The Debtors filed a response to the Objection ("Response," ECF Doc. # 56), and the Board filed a reply (the "Reply," ECF Doc. # 63). The issue of the designation under Subchapter V is an important issue in this case since the cramdown rules for Subchapter V cases may permit these debtors to confirm a plan that allows the equity owners to retain their interest even though unsecured creditors would recover less than the full amount of their claims and reject the plan.

This opinion addresses only the eligibility of the Debtors to proceed with this case under Subchapter V. For the reasons explained below, the Court concludes that the Debtors are SARE debtors and therefore ineligible to proceed as small business debtors under Subchapter V.

2

## I.   BACKGROUND

### A.  Prior Case History

The dispute between the Debtors and the Board had its start over a decade ago.  In March 2006, Tribeca Mews became the sponsor of the sale of condominium units in a building located at 25 Murray Street, New York, New York (the "Building") pursuant to an offering plan (the "Offering Plan").  (Declaration of Evan R. Scheiber, the "Schieber Decl.," Adv. Pro. ECF Doc # 2-3 ¶ 2.)  Tribeca Mews reconstructed the Building into a mixed use condominium tower containing 74 residential units, 17 commercial units, one (1) superintendent's unit, a cellar and a sub-cellar.  (*Id.* ¶¶ 4-5.)  The Offering Plan required Tribeca Mews to regularly renew temporary certificates of occupancy ("TCO") until ultimately obtaining a permanent certificate of occupancy ("PCO").  (*Id.* ¶ 6.)  Prospective purchasers were informed that the building would be under a TCO for a maximum of two (2) years before it would receive a PCO.  (*Id.* ¶ 7.)  Tribeca Mews began to sell units July 1, 2008 – it failed to acquire a PCO on or before July 10, 2010, the two-year deadline imposed by the Offering Plan.  (*Id*. ¶¶ 9, 11.)  By July 2011, Tribeca Mews had sold all but ten (10) units in the Building and ultimately transferred seven (7) of the units to RentCo, an entity organized by Tribeca Mews and owned by Tribeca Mews' principals, for no consideration.  RentCo succeeded Tribeca Mews as sponsor.  (*Id.* ¶ 12-13).  RentCo continues to control six (6) of the units (the "Units").  (Declaration of Brad Thurman, the "Thurman Decl.," ECF Doc. # 7 ¶ 6.)  The Units are currently rented and/or occupied.  (*Id.*)  The Building remains without a PCO – it had been covered by 24 TCOs between July 2008 and May 2021.  (Schieber Decl. ¶¶ 24-25).  The Building has not had a TCO since May 2021.  The absence of a PCO or TCO allegedly substantially impairs the value of all of the units within the project, as well as the ability of the unit owners to refinance or market their property.

Due to issues regarding the certificates of occupancy and alleged deficiencies with the building, the Board commenced a lawsuit in New York State Court on September 23, 2013, *Tribeca Space Managers Inc. v. Tribeca Mews Ltd., et al.,* (Index No. 653292/2013, NY County) (the "State Court Action"). After a mistrial in 2017 and a number of failed settlement negotiations, the case was set for trial in New York State Supreme Court on October 20, 2025. (*Id.* ¶ 31.) The bankruptcy cases were filed on October 16, 2025, staying the State Court Action. The Debtors removed the State Court Action to this Court (Case No. 25-01143), which the Board shortly after moved to dismiss (Case No. 25-01143, ECF Doc. # 3).

**B.  The Board's Objection to Subchapter V Status**

The Board argues that the Debtors are ineligible to proceed under Subchapter V. Section 101(51D) of the Code "exclude[s from Subchapter V] a person whose primary activity is the business of owning single asset real estate . . . ." 11 U.S.C. § 101(52D). The Debtors argue that they do not fall within the exclusion. The parties also dispute who has the burden: the Debtors argue that the Board has the burden of showing that Debtors are SARE debtors; the Board argues that the Debtors have the burden of showing they are eligible for Subchapter V.

The SARE definition in the Code lays out three requirements for a debtor to be considered a SARE:

> The term "single asset real estate" means real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto.

4

11 U.S.C. § 101(51B); *see also Ad Hoc Group of Noteholders v. Pacific Lumber Co. (In re Scotia Pacific Co., LLC)*, 508 F.3d 214, 220 (5th Cir. 2007) (noting that the definition sets out three requirements).

The Board argues that the six Units owned by RentCo generate substantially all of RentCo's gross income and the leasing of the Units is the extent RentCo's business operations. (Opposition ¶ 16.) The Board argues that the six Units owned by RentCo should be considered as part of the overall "project" as defined by section 101(51B), as a debtor can still be considered a SARE debtor if it operates multiple pieces of real estate if they are a single project. (*Id.* ¶¶ 16-17 (citing *In re Vargas Realty Enters. Inc.*, 2009 WL 2929258, at *4 (Bankr. S.D.N.Y. July 23 2009).)

The Board relies on two cases to support its argument. *See In re Amerinvest, LLC*, 670 B.R. 40 (Bankr. E.D. Va. 2025) and *In re Hassen Imps. P'ship*, 466 B.R. 492 (Bankr. C.D. Cal. 2012). The cases enumerate a list of factors to consider in determining whether multiple properties constitute a single project. Did the debtor have a "common plan or purpose for the property?" Courts examine "(1) the use of the properties; (2) the circumstances surrounding the acquisition of the properties; (3) the location of the properties and proximity of the properties to one another; and (4) any plans for future redevelopment, sale or abandonment of the properties." *In re Amerinvest, LLC*, 670 B.R., at 46. In *Amerinvest*, the key aspect of the analysis in finding the debtor was a SARE and therefore not eligible for Subchapter V was the use of the property—three parcels of land, and the debtor's "common plan" to rent out the three parcels and collect rent. *Id.* at 47. The Board argues that the Offering Plan operates as the "common plan" governing the

5

use of the Units as it sets out that the Units will be leased out until they can be sold. (Opposition ¶ 22.)

Finally, the Board distinguishes this case from Judge Mastando's decision in *In re Nuovo Ciao-Di, LLC*, 650 B.R. 785 (Bankr. S.D.N.Y. 2023), where he held that two condominium units with the same owner did not satisfy the definition of a SARE. The Board argues that the condominiums in *Nuovo Ciao-Di* had dissimilar uses, distinct future plans, and unique characteristics which led the court to conclude there was not one project; the Units in this case are of identical use, part of a common plan, and none of the Units have unique characteristics. (Opposition ¶ 23; *In re Nuovo Ciao-Di, LLC*, 650 B.R. at 780.) The Units are all held by RentCo for leasing and, according to the Board, cannot be sold due to the continued lack of a PCO for the Building. (Opposition ¶ 23.)

### C. Debtors' Response

The Debtors contest the Board's characterization of RentCo as a SARE debtor. First, Debtors dispute that they have the burden of proof, arguing that the "movant bears the burden of establishing that multiple parcels are a 'single property or project'" in determining SARE eligibility. *In re Nuovo Ciao-Di, LLC,* 650 B.R. at 788 (citing *In re 218 Jackson LLC*, 2021 WL 3669371, at *3 (Bankr. M.D. Fla. June 3, 2021)).

The Debtors then apply the four factors from *In re Hassen*, 466 B.R. 492, to support that the Units are not a single property or project. (Response ¶ 14.) Each unit is separately titled and could be valued, marketed, or sold without affecting interest in the remaining units – they are all distinct entities not operated as a single enterprise. (*Id.* ¶¶ 15-16.) In addition, the Units were not purchased nor retained pursuant to a single plan; rather the Building was developed and the units sold over time, with RentCo still retaining ownership over the six units only due to an

inability to sell them.  (*Id*. ¶ 17.)  Third, Debtors argue that the proximity of the Units, all of which are in the Building, is insufficient to prove they are a project.  (*Id.* 18.)  Lastly, RentCo has no intention to retain the Units as part of a unified real estate project, as RentCo's current activities involve attempting to obtain the occupancy permits for the Building and working with the Board on repairs, all of which constitute sponsor-based obligations.  (*Id*. ¶ 19.)

The Debtors additionally argue that even if the Units generate substantially all of the Debtors' gross income (the Debtors' counsel acknowledged at the Hearing the Debtors have no other source of income), that alone does not satisfy section 101(51B) unless the Debtors' activities are limited solely to passive property ownership.  (*Id.* ¶ 23 (citing *In re Chen Foundation*, 661 B.R. 34, 37 (Bankr. S.D.N.Y. 2024).)  Debtors claim that RentCo's activities extend "well beyond" passive ownership, as they are involved in fulfilling the outstanding obligations as building sponsor, including coordinating with the Board's engineers, architects, and consultants to address the Building's deficiencies and securing TCOs.  (Response ¶ 25.) Debtors point to the work they have done litigating the State Court Action as demonstrative of their ongoing business activities related to the sponsorship of the building and how their current responsibilities go beyond passive ownership of the Units.

The Debtors look to case law to bolster their points.  They believe that the Board is incorrect in distinguishing this case from *In re Nuovo Ciao-Di*, 650 B.R. 785, and looking towards *In re Amerinvest*, 670 B.R. 40, for support, and that the opposite is truly the case.  As in *Nuovo Ciao-Di*, RentCo owns separately titled units and remains actively engaged in other responsibilities besides the passive ownership of the Units.  (*Id.* ¶ 28.)  And unlike in *Amerinvest*, where the debtor owned the multiple parcels as one effective unit for rental income and had no other ongoing obligations related to the parcels, the Units are not being held solely

for income generation and RentCo continues to have operations separate from the Units related to its role as sponsor to the Building.  (*Id.* ¶ 28.)

Additionally, Debtors raise that Tribeca Mews is eligible to elect Subchapter V as they remain engaged in the commercial and business activities as the original sponsor and have ongoing obligations under the Offering Plan.  This, in addition to their ongoing defense in the State Court Action, supports a finding that Tribeca Mews "engage[s] in commercial or business activities" as required under the Code.  11 U.S.C. § 101(51D).  The cases cited by the Debtors, they argue, support reading the requirement broadly and inclusively, and that a debtor can be Subchapter V eligible through winding down and addressing liabilities, even if it no longer maintains revenue generating operation: "[T]he kinds of activities that are associated with a business that is no longer operating – but is still pursuing and defending claims and otherwise engaged in winding up its activities – can amount to 'business or commercial activities' for purposes of Subchapter V eligibility." *In re Fama-Chiarizia*, 655 B.R. 48, 62 (Bankr. E.D.N.Y. 2023).

### D.  The Board's Reply

The Board notes at the outset of its reply that it is the Debtors that carry the burden of proof on their eligibility because they have claimed a small business designation.  *See, In re Fama*, 655 BR 648, 658 (Bankr. E.D.N.Y. 2023) ("[I]f the debtor's election to proceed under Subchapter V is challenged, the debtor bears the burden to show that it is, in fact, eligible to proceed in that way . . . .  [T]he vast majority of courts addressing the issue have found that the debtor bears the burden of proof to establish eligibility to proceed under Subchapter V. This is consistent with the rule that courts apply in connection with eligibility to proceed under other chapters.") (internal quotation marks and citations omitted); *In re Hillman*, 2023 WL 3804195, at

*3 (Bankr. N.D.N.Y. June 2, 2023). The Board claims that this is the standard adopted by courts within the Second Circuit, with a party seeking to impose a SARE qualification on a debtor only carrying the burden of proof if the debtor had not already claimed a small business designation. (Reply ¶ 2 (citing *In re Chen Found., Inc.*, 661 B.R., at 38 n.4 (putting the burden on the movant to prove a SARE designation in non-Subchapter V bankruptcy proceeding).)

The Board again reasserts that the Units are a project with a common business plan and that RentCo is not involved in any other substantial business activity. First, the Board notes that unlike in the cases cited by the Debtors where the properties in question were distinct and shared little similarities, the Units all share the same residential use without any unique characteristic. (Reply ¶¶ 3-5.) Regarding the business activity referenced by the Debtors, the Board diminishes the activities touted in the Objection. While the Debtors claim to be engaged in sponsorship obligations including obtaining a PCO, the Board notes the Debtors' failure to actually do so since 2010 and that the last TCO lapsed in 2021. (*Id*. ¶ 7.) In addition, the Debtors claim to have engaged with vendors to conduct work on the building, but the Board argues that the Debtors only cite to "outdated proposals dating back to 2022" (*id* ¶ 8), and that these proposals are incidental activities that would not imperil the SARE designation (*id* ¶ 9). To make a showing of substantial business activity, the Debtors need to provide evidence that there is an alternative income producing business in the Building. (*Id*. ¶ 11.) According to the Board, the Debtors fail to do so.

Lastly, the Board addresses the debt limit for a Subchapter V debtor, which was not addressed in either the Objection or Response. The Board claims that while their claim has not yet been fixed as the State Court Action is ongoing, the idea that the claim is "contingent or less than the statutory minimum is pure sophistry" as it will cost more than the $3,024,725

Subchapter V debt limit to fix the issues plaguing the Building. (*Id.* ¶ 12.) The Board notes that the State Court had previously found the Debtors at fault for being unable to secure a PCO due to their failure to address outstanding work as required by the Department of Buildings. (*Id.* ¶ 15.) The Board has retained an engineering firm and cost estimator who compiled a report that estimates the costs to have the Building conform with the Offering Plan to be $42 to $45 million. (*Id.* ¶ 17, Exhibit C (Declaration of Cost Estimator Rajneesh Sayal) ¶ 7.) The fact remains, however, that while the Board's claim is likely to be substantial, it is presently unliquidated and is not counted against the debt limit for eligibility for Subchapter V.

This Court held a hearing on April 6, 2026 on the Objection. During the hearing the Debtors confirmed that the Units constitute their sole income source. Hearing at 15:50-18:08, *In re 25 My RentCo LLC* (Bankr. S.D.N.Y. April 6, 2026) (No. 25-12280).

## II.   **LEGAL STANDARD**

To be eligible for Subchapter V, a debtor must qualify as a "small business debtor" under the code. 11 U.S.C. § 1182. Small business debtor is defined in code as:

> (A) subject to subparagraph (B), means a person engaged in commercial or business activities (including any affiliate of such person that is also a debtor under this title and *excluding a person whose primary activity is the business of owning single asset real estate*) that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition or the date of the order for relief in an amount not more than $2,000,000 (excluding debts owed to 1 or more affiliates or insiders) not less than 50 percent of which arose from the commercial or business activities of the debtor; and
>
> (B) does not include—
>
> > (i)    any member of a group of affiliated debtors under this title that has aggregate noncontingent liquidated secured and unsecured debts in an amount greater than $2,000,000 (excluding debt owed to 1 or more affiliates or insiders);

10

> (ii)    any debtor that is a corporation subject to the reporting requirements under section 13 or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m, 78o(d)); or
>
> (iii)   any debtor that is an affiliate of a corporation described in clause (ii).

11 U.S.C. § 101(51D) (emphasis added).  SARE debtors are explicitly not eligible for Subchapter V.  The Code defines single asset real estate as: "real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto."  11 U.S.C. § 101(51B).

Courts have found that a debtor owning multiple proprieties can qualify as a SARE if the property is operated by the debtor under a "common plan."  *See In re JJMM Int'l Corp.*, 467 B.R. 275, 277-78 (Bankr. E.D.N.Y. 2012) ("When, as in this case, a property is comprised of multiple parcels, courts generally apply the 'single project' prong to determine if the property satisfies the definition of a SARE. For a property or properties to constitute a single project, common ownership alone is not sufficient; the debtor must also have a common plan or purpose for the property."); *see also In re Nuovo Ciao-Di, LLC*, 650 B.R., at 789; *In re Yishlam, Inc.*, 495 B.R. 328 (Bankr. S.D. Tex 2013).  This is a fact specific inquiry, and courts have cited to a non-exclusive four-factor list to help guide the inquiry: "(1) the use of the properties; (2) the circumstances surrounding the acquisition of the properties, including the time of the acquisition and the funds used to acquire the properties; (3) the location of the properties and proximity of the properties to one another; and (4) any plans for future development, sale or abandonment of the properties." *In re Nuovo Ciao-Di, LLC*, 650 B.R. at 789 (citing *In re Hassen Imps. P'ship*,

11

466 B.R. at 507).  "Use of the properties, however, is the *sine qua non* of a single project

determination."  *In re Hassen Imps. P'ship*, 466 B.R. at 508.

The second factor at issue in the SARE analysis is whether the property or project at issue

generates "substantially all of the gross income of the debtor."  11 U.S.C. § 101(51B).

The final factor of the analysis is whether the debtor conducts substantial business

activity other than operating the property or project.  *Id.*  The business activities related to the

property can extend to "incidental activities . . . intrinsic to owning and developing the real

estate" for the debtor to still be considered a SARE.  *In re Chen Found., Inc.*, 661 B.R., at 37

(quoting *In re Vargas Realty Enterprises Inc.*, 2009 WL 2929258, at *4).  These incidental

activities include the leasing and maintenance of rental property.  *In re Chen Found., Inc.*, 661

B.R., at 38; *see also In re Vargas Realty Enterprises Inc.* 2009 WL 2929258, at * 4 (finding that

a debtor managing property repairs and improvements to increase rental income were incidental

activities).  A debtor is not a SARE "if it provides goods or services unrelated to the mere

ownership of real estate."  *In re Chen Found., Inc.*, 661 B.R., at 38; *see also In re 255 North

Front Street Condos, Inc.*, 2025 WL 1068714 at *3 (Bankr. E.D.N.C. April 8, 2025) (concluding

that a condo association debtor was not a SARE because its income was derived from services

pursuant to statutory obligations as a unit owners' association and not deriving from the property

itself).

## III.    DISCUSSION

### A. The Debtors Bear the Burden of Proof

The Parties dispute who bears the burden of proof.  The Board argues that the Debtors

have the burden of proof to establish their eligibility to proceed under Subchapter V.  (Objection

¶ 14; Reply ¶ 2.)  If the Debtors are SARE debtors, they are not eligible to designate their cases

under Subchapter V.  The Debtors argue that the Board bears the burden of proof as to RentCo's status as a SARE *irrespective* of any burden related to their Subchapter V status.  (Response ¶ 12.)   The Code is silent who has the burden of proof for the purposes of SARE designation and Subchapter V.

In the Second Circuit, courts have adopted the "majority position" that the debtor has the burden of proof to show that it is eligible to proceed under Subchapter V.  *See In re Fama*, 655 B.R., at 658; *In re Hillman*, 2023 WL 3804195, at *3.  While neither *Fama* nor *Hillman* dealt with an objection from a movant based on a potential SARE designation, courts which have considered the issue overwhelmingly conclude that the burden remains on the debtor.  *See e.g. In re Amerinvest, LLC*, 670 B.R., at 47 ("The Court acknowledges that there is case law in other jurisdictions holding that the burden of proof for SARE designation is on the moving party. . . . However, because the matters before the Court implicate eligibility, and because the Court finds that the debtor seeks to take advantage of the powerful tools and advantages of Subchapter V, the Court will follow the majority approach to allocate the burden of proof on matters of eligibility to the Debtor."); *In re Evergreen Site Hldgs, Inc.*, 652 B.R., at 316 (putting the burden on the debtor is "consistent with long-standing case law in this district that the debtor has the burden of proof in establishing eligibility to seek relief under various chapters of the Bankruptcy Code."); *In re 255 N. Front St. Condos, Inc.*, 2025 WL 1068714, at *2 ("The assertion that the Debtor is a SARE debtor is, at its core, a challenge to the Debtor's election to proceed under Subchapter V. For that reason, the Debtor has the burden of establishing that it is not a SARE debtor." (internal citation omitted)).

The vast majority of courts have adopted the majority rule, the standard of this Circuit, even when the movant is objecting to Subchapter V based on a potential SARE designation.

This Court will do the same; the burden is on the Debtors to show that they should not be designated as SARE debtors and are thus eligible for Subchapter V.

**B.  The Units are a Project Subject to a Common Plan**

The SARE analysis starts with determining whether RentCo's ownership of the Units constitutes a single property or project.  It is uncontested that the Units do not constitute a single property, thus the only question is whether the Units constitute a project subject to a common plan.

Both parties cite *In re Nuovo Ciao-Di* and *In re Amerinvest, LLC*; the former case finding the owner of two condominium units was not a SARE and the latter finding the owner of three parcels of was a SARE debtor.  In *Nuovo Ciao-Di*, the court noted that even though the units were purchased together and subject to a single mortgage, the debtor had not demonstrated a plan to use the properties for a single purpose, had not leased the units together, each unit had distinct qualities – one unit was subject to an easement – and the debtor was contemplating selling one of the units.  *In re Nuovo Ciao-Di*, 650 B.R. at 789-90.  The court in *Amerinvest*, for comparison, noted that while the parcels of land in question were legally distinct entities, they were purchased together and the debtors intended to continue renting parcels as a commercial landlord, which the court considered to be the debtor's "common purpose" for SARE designation.  *In re Amerinvest, LLC*, 670 B.R. at 49.  Obviously, the Debtors argue that their situation mirrors that of the debtor in *Nuovo Ciao-Di* while the Board argues that *Amerinvest* is instructive.

Many other cases have examined whether a similarly situated debtor to RentCo, an entity which owns multiple units of a similar type of property, is considered a project subject to a common plan.  In *In re Yishlam* the court held that the debtor was not operating a project.  The debtor initially owned 57 units in two apartment buildings, but by the petition date had 20 total

14

unsold units remaining. *In re Yishlam*, 495 B.R. at 329. The court noted that there were facts going both ways. In favor of a SARE finding, the court focused on that the units are in close proximity to each other (the two buildings are 500 feet apart), are the debtor's only source of income, the debtor had no employees, and the debtor's only debts are in relation to the operation of the units. *Id.* at 330. Against a SARE designation, the two buildings were purchased at separate times, converted at separate times, and operated separately. *Id.* Ultimately the court held that the factors were largely in equilibrium, as the court gave greater weight to the fact that the two buildings are operated separately, and ultimately held that the movant failed to demonstrate that the two properties constituted a single project. *Id.* at 332.

In *In re Vargas Realty Enterprises*, the court denied a debtors' motion for reargument on the court's prior order which held, in part, that the debtors should be designated as a SARE. The debtors, all entities owned outright by one individual, each owned apartment buildings on West 111th Street in Manhattan. *In re Vargas Realty Enterprises Inc.*, 2009 WL 2929258 at *1. The court had granted the initial motion and found the debtors to be a project and therefore a SARE as a single individual operated the properties from a single location, the buildings were jointly financed, and the properties served as security for one another. *Id*. at *2. On reargument, the debtors did not contest the finding that they operated as a project, focusing instead on the fact that they operated a business beyond a rental building. The court found this argument unavailing. *Id.* at *3 (holding that management of property and improvements to the buildings were "intrinsic to owning and developing the real estate" and, therefore, incidental).

The court in *In re Philmont Development Co.*, 181 B.R. 220 (Bankr. E.D. Pa 1995) dealt with determining whether jointly administered debtors, limited partnerships who owned multiple semi-detached homes purchased from another debtor, constituted a single project under section

15

101(51B) soon after the section was enacted. The court determined that the separate limited partnerships, all of whom owned semi-detached homes, were a single project as they were operated together:

> The Court, in particular, does not believe it is legally significant that Philmont Development built all of the semi-detached houses and then separately sold a discrete number thereof to each limited partnership. The fact remains that each limited partnership is operating real property consisting of more than 4 residential units; and that the limited partnerships are not conducting any substantial business other than managing these residential units which, in turn, provide all of each Debtor limited partnerships' income.

*Id.* at 224.

RentCo has qualities similar to the other debtors found to operate as a single project: they own six similar units in one building; RentCo gained control over the Units at the same time upon transfer from Tribeca Mews for no consideration; the Units have been controlled by the same principals (the Thurmans control both Tribeca Mews and RentCo) since conversion; and all Units have been operated in the same manner since being transferred to RentCo through residential leases. Applying at the *Hassen* factors, 466 B.R. 492, additionally points to RentCo's ownership of the Units being part of a common plan:

(1) The Units share a common use as residential rental housing;

(2) The Units were acquired by RentCo all at the same time through a transfer from Tribeca Mews for no consideration;

(3) The Units are all located in the Building and all listed for rent; and finally

(4) RentCo has not taken substantial steps to show they truly intend to dispose of the units, including their failure to acquire a PCO for the building. *Cf. In re Nuovo Ciao-Di, LLC*, 650 B.R. at 790 (The court notes the debtor "*currently* attempting to sell one of the Properties" supports a finding that the debtor is not a SARE).

16

The facts show that the Units constitute a project subject to a common plan, satisfying the requirement for SARE designation.

### C.  The Debtors' Sole Income Comes from Renting the Units

The Debtors have failed to refute the Board's claim that RentCo's sole source of income comes from renting the Units.  The Debtors confirmed during the April 6 hearing that they do not collect management fees from the other units in the Building.  The Debtors have not made any other income claims.

### D.  RentCo does not Conduct Substantial Business Activity Beyond the Passive Ownership of the Units

The Debtor's Objection claimed that RentCo conducts business activity separate from the Units, including continued coordination with engineers, architects, and contractors related to "addressing construction deficiencies and obtaining required regulatory approvals" necessary for the Building.  (Objection ¶ 28.)  These activities, while not directly related to renting the Units, are the type of "incidental activities . . . intrinsic to owning and developing the real estate" that business activities can extend to and the debtor still found to be a SARE.  *In re Chen Found., Inc.*, 661 B.R. at 37.  The court in *Chen Foundation* cited to several cases where a property owner engaged in activities adjudged to be more than merely incidental, including a golf course with associated car rental and concession stand (*In re Larry Goodwin Golf, Inc.*, 219 B.R. 391, 393 (Bankr. M.D.N.C. 1997), a debtor hotel operating a gift shop, restaurant, and bus tours out of the property at issue (*Centofante v. CBJ Dev., Inc. (In re CBJ Dev., Inc.)*, 202 B.R. 467, 472-473 (B.A.P. 9th Cir. 1996), and a marina that offered more than just rental moorings (*In re Kkemko, Inc.*, 181 B.R. 47, 51 (Bankr. S.D. Ohio 1995)).  In *Chen Foundation*, the court found that the debtor's operation of a portion of the property as an art gallery went beyond incidental activities intrinsic to owning the property.  *In re Chen Found., Inc.*, 661 B.R. at 39.

17

None of the activities that Debtors raised as "substantial business activity" rose to levels of the activities in the cases cited above.  All of the Debtors' activities are intrinsic to owning and developing real estate, here the Building, for which it is a sponsor of and the Units that remain in their possession.  None of the activities are undertaken for additional profit separate from their otherwise passive ownership of the Units.

Ultimately, the Debtors have insufficiently refuted the Objection; RentCo will be considered a SARE and is therefore ineligible for Subchapter V status.

## IV.    CONCLUSION

For the reasons stated herein, the Board's Objection is **SUSTAINED**.  RentCo is designated as a single asset real estate debtor under section 101(51B) of the Bankruptcy Code and its small business debtor and Subchapter V designations under sections 101(51D) and 1182(1) are hereby **REVOKED**.  It may proceed with these cases under Chapter 11.

**IT IS SO ORDERED.**

Dated:    May 22, 2026
          New York, New York


               _Martin Glenn_

               MARTIN GLENN
          Chief United States Bankruptcy Judge